Douglas Thomas Moore #4640
Law Offices of Douglas Thomas Moore, LLC
820 Mililani Street, Suite 701
Honolulu, Hawai'i 96813
Telephone: 808-526-0056
Facsimile: 808-526-0057
dtmlawoffice@gmail.com

Attorney for Plaintiff,
ELIZABETH A. HARTFORD

UNITED STATES DISTRICT COURT

DISTRICT OF HAWAI'I

| | |
|---|---|
| ELIZABETH A. HARTFORD,<br><br>  Plaintiff,<br><br> vs.<br><br>WILD SIDE SPECIALTY TOURS LLC and, DOES 1 through 10,<br><br>  Defendants. | CASE NO:<br><br>COMPLAINT FOR PERSONAL INJURIES AND DAMAGES UNDER THE JONES ACT FOR NEGLIGENCE; UNDER GENERAL MARITIME LAW FOR UNSEAWORTHINESS AND FOR MAINTENANCE AND CURE; REQUEST FOR JURY TRIAL; SUMMONS |

THIS ACTION IS BROUGHT UNDER *28 U.S.C. §1916*

ALLOWING A SEAMAN TO SUE WITHOUT PREPAYMENT

OF FEES, PLAINTIFF IS WITHOUT FUNDS.

COMES NOW the plaintiff, ELIZABETH A. HARTFORD, and for

causes of action against the defendants, and each of them, complains and alleges

as follows:

///

///

I.

JURISDICTION

1. This is a claim for damages for injuries brought by a seaman against her employer, and the owner and the operator of the vessel on which she was working, when she was injured.

2. Jurisdiction is vested in this Court pursuant to the general maritime law of the United States of America, and the Jones Act, 46 U.S.C. §30104 et seq., granting the seaman a trial by jury at her option, and which she so chooses.

3. Jurisdiction is also based upon the laws of the State of Hawai'i and of the Territory and Kingdom of Hawai'i and those traditional remedies for seaman which were incorporated into the laws of the United States of America when the Kingdom of Hawai'i was annexed.

II.

PARTIES and RELATIONSHIPS

4. **Plaintiff ELIZABETH A. HARTFORD**

Plaintiff ELIZABETH A. HARTFORD, (hereinafter "plaintiff") is an adult resident of the State of Hawai'i.

5. **Defendant WILD SIDE SPECIALTY TOURS LLC**

Defendant WILD SIDE SPECIALTY TOURS LLC, (hereinafter "defendant") is a foreign Limited Liability Company, incorporated in the State of Oregon, registered to and doing business in the State of Hawai'i, with its

principal place of business located at 87-1002 Hakimo Pl., Unit C, Waianae, Hawai'i 96702.

6.     Plaintiff is ignorant of the true names and capacities of defendants sued herein as Does 1 through 10, inclusive, and therefore sues these defendants by such fictitious names.  Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.  Plaintiff is informed and believes and based thereon alleges that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that plaintiff's injuries as herein alleged were legally caused by said negligence.

7.     Plaintiff is informed and believes and thereupon alleges that at all times material herein, defendants, and each of them, were the agents, employees, and/or joint venturers of each co-defendant, and were acting within the course and scope of such agency, employment and/or joint venture.

8.     At all times herein, plaintiff was employed by WILD SIDE SPECIALTY TOURS LLC, to work on its fleet of vessels as a Captain, crew member and seaman.  Plaintiff was in the course and scope of her said employment when she was injured as alleged herein.

9.     Plaintiff is informed and believes and thereupon alleges that at all times material herein, WILD SIDE SPECIALTY TOURS LLC was the owner, or owner pro hac vice of a fleet of vessels operated out of Waianae Small Boat Harbor, including the vessel ALAKA'I (hereinafter "vessel").

10.     Plaintiff is informed and believes and thereupon alleges that at all times material herein, WILD SIDE SPECIALTY TOURS LLC was the operator of a fleet of vessels operated out of Waianae Small Boat Harbor, including the vessel ALAKA'I.

11.     Plaintiff suffered personal injuries while working as a seaman and crew member of the vessel on or about February 28, 2018.

## III.

## FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS
## FOR NEGLIGENCE UNDER THE JONES ACT

12.     Plaintiff incorporates herein by this reference, each and every allegation contained in paragraphs 1 through 3 (Jurisdiction) and paragraphs 4 through 11 (Parties and Relationships) of this Complaint as though fully set forth herein.

13.      On the morning of February 28, 2018, plaintiff, along with three other crew members employed by defendant reported for work to defendants' berths at the Waianae Small Boat Harbor.  On arrival plaintiff cancelled her scheduled charter on the ALAKA'I because of high winds, chop, and surge in the harbor and is informed and believes that defendant also cancelled the charter of its vessel Island Spirt because of bad weather.  Before plaintiff left the dock, it was reported that the mooring line from a cement pylon which was part of the dock, to the port bow of the ALAKA'I had broken.  The broken line increased the risk that the ALAKA'I would break free of its moorings and required immediate

repair.

14.     A meeting was held on the dock among three of defendants Captains present, including Captain Downing Braley, Captain Jed Haag and plaintiff to discuss how the failed mooring line would be replaced.  Senior Captain Braley decided to have himself operate the vessel from the helm, and with the engines on move the vessel slowly forward toward the pylon, with Captain Haag on bow to tie the new mooring line, plaintiff on the stern line to release it slowly as the vessel motored forward toward the pylon, and crew member Noelle Shaughnessy on the vessel and/or the dock to fend and prevent the vessel from hitting the dock.

15.     Captain Braley then attached a stern line from the starboard stern of the ALAKA'I to a cleat on the finger pier that was on the far side of the finger pier and already had mooring lines attached to it from another of defendant's vessels. Captain Braley next boarded the vessel and started the engines, then released the port side mooring lines and directed the release of the starboard mooring lines except for the forward spring line, leaving only the starboard forward spring line and the stern line that plaintiff was handling attached to the vessel.

16.     Plaintiff initially tried to control the payout of the stern line with an S wrap on the cleat, but could not because of the other lines on the cleat.  She switched to a half turn on the cleat, paying out line slowly as the vessel motored slowly toward the pylon.  Once the vessel was close to the pylon, plaintiff attempted to

stop the stern line from paying out further in anticipation of an order from Captain Braley to tie off the stern line to the cleat. At that point the stern line began to slip through the cleat overcoming plaintiff's efforts to stop it. Plaintiff and crew member Shaughnessy began to yell to Captain Braley that the stern line was slipping and asking him to put the engine in neutral to stop the forward motion of the vessel, but Captain Braley had left the helm to help Captain Haag tie the new mooring line from the pylon to the bow and he did not respond.

17. As the ALAKA'I continued to move forward the vessel was in danger of colliding with the pylon. Plaintiff and crew member Shaughnessy continued to yell in an effort to get Captain Braley's attention as plaintiff struggled to hold the stern line to prevent it from slipping further. Plaintiff attempted to wrap the stern line around the cleat to stop the stern line but was not able to do so because of the strain on the line. Plaintiff continued to yell to get Captain Braley's attention and continued to hold on to the stern line to prevent it from slipping further, but her strength was overcome by the strain and her hand was drawn into the cleat where the fingers of her right hand were crushed between the cleat and the stern line.

18. At said time and place, and in said circumstances, defendants, and each of them, caused, permitted, and allowed the ALAKA'I, its gear and appurtenances to be in an unsafe, dangerous, and defective condition and to be operated negligently and unsafely in one or more of the following particulars, and thereby

permitted said vessel to become unsafe and unseaworthy:

    a.    By causing or allowing the mooring line from a cement pylon which was part of the dock, to the port bow of the ALAKA'I, to fail in weather which was reasonably foreseeable;

    b.    By failing to provide adequate training, instruction, direction and supervision to the personnel who were required to repair the failed mooring line in bad, but foreseeable weather;

    c.    By causing or allowing the stern line to be secured to a cleat that already had mooring lines from another vessel secured to it;

    d.    By causing or allowing personnel to be assigned to tasks they were not adequately trained to perform;

    e.    By causing or allowing the vessel to be in forward instead of neutral when the plaintiff was required to tend and stop the stern line from slipping further;

    f.    By causing or allowing the vessel to motor forward with no one at the helm to stop and/or reverse it when it was necessary to do so;

    g.    By failing to establish and maintain a proper lookout so that the vessel which was being operated in forward could not be put in stop and/or reverse when it was necessary to do so;

    h.    By causing or allowing the vessel to be operated at speed that was unsafe for the conditions;

   i. By causing and allowing an unsafe work method to be used to replace the failed mooring line;

   j. By causing or allowing the vessel to be operated carelessly and negligently;

   k. By failing to provide plaintiff with a reasonably safe place to work.

19. As a direct and legal result of the aforesaid negligence of the defendants, and each of them, plaintiff was hurt and injured in her health, strength, and activities and sustained personal injuries.  Plaintiff is informed and believes and thereon alleges that some or all of her injuries are reasonably likely to be permanent, all to her general damage in a sum in excess of the jurisdictional minimum of the court.

20. As a further direct and legal result of the negligence of the defendants, and each of them, it has been and continues to be necessary for plaintiff to receive medical care and treatment, and it will be so necessary for an indefinite period of time in the future.  The cost of said medical care is not known at this time, and plaintiff alleges as damages herein the amount of such costs, according to proof at trial.

21. As a further direct and legal result of the aforesaid negligence of the defendants, and each of them, plaintiff was prevented from attending her usual occupation for a period of time and is informed and believes and thereon alleges that she will continue to be so prevented for an indefinite period of time in the

future, thereby resulting in a loss of earnings to plaintiff, the exact amount of which is unknown at this time.  Plaintiff alleges as damages herein the amount of such loss of earnings in an amount according to proof at trial.

IV.

**SECOND CAUSE OF ACTION AGAINST ALL DEFENDANTS**

**FOR UNSEAWORTHINESS**

22.     Plaintiff incorporates herein by this reference, each and every allegation contained in paragraphs 1 through 3 (Jurisdiction), paragraphs 4 through 11 (Parties and Relationships), and paragraphs 12 through 21 of her First Cause of Action of this Complaint as though fully set forth herein.

23.     On or about the aforesaid dates, the aforesaid vessel was unseaworthy in its operation, maintenance, supervision, control, equipment, gear, inspection, and work method and in the absence of a safe place thereon for plaintiff to work, so as to cause an injurious incident, thereby legally causing plaintiff the injuries and damages as herein alleged.

V.

**THIRD CAUSE OF ACTION AGAINST ALL DEFENDANTS**

**FOR MAINTENANCE AND CURE**

24.     Plaintiff incorporates herein by this reference, each and every allegation contained in paragraphs 1 through 3 (Jurisdiction), paragraphs 4 through 11 (Parties and Relationships), paragraphs 12 through 21 of her First Cause of

Action and paragraphs 22 and 23 of his Second Cause of Action of this Complaint as though fully set forth herein.

25.  As a legal result of the aforesaid injuries sustained by plaintiff, and without regard to the question of liability or negligence on the part of the defendants, and each of them, the defendants became obligated to provide plaintiff with proper medical care and attention and with means with which to sustain and maintain herself while receiving medical care and attention and while unable to resume her normal duties, commencing on the date of the injuries alleged herein and continuing thereafter until plaintiff shall have been cured.

26.  Plaintiff has made demand for prompt payments of maintenance and cure of defendants, and each of them, and despite the demand of plaintiff for prompt payment of maintenance and cure, defendants have to some extent failed to provide same or failed to provide same in a timely and reasonable manner.  The exact period for which plaintiff is entitled to payment of maintenance and the exact amount of cure are presently unknown.  Plaintiff alleges as damages herein the amount of said maintenance and cure in an amount according to proof at trial.

## VI.

## PRAYER

WHEREFORE, plaintiff prays for damages against the defendants, and each of them, as follows:

    1.  For general damages, special damages, pecuniary damages

and non-pecuniary damages, as the law may allow, in amounts according to proof;

   2. For medical expenses, past and future, in amounts according to proof;

   3. For loss of earnings, past and future, in amounts according to proof;

   4. For maintenance and cure benefits, in amounts according to proof;

   5. For costs of suit herein, in amounts according to proof; and,

   6. For such other and further relief as the court may deem just and proper.

## REQUEST FOR JURY TRIAL

Plaintiff, ELIZABETH A. HARTFORD, hereby demands trial by jury of the above-captioned matter.

DATED: February 12, 2021, Honolulu, Hawai'i.

           */s/ Douglas Thomas Moore*
           Douglas Thomas Moore
           Law Offices of Douglas Thomas Moore, LLC
           Attorney for Plaintiff,
           ELIZABETH A. HARTFORD